JUNGE v. MACKNIGHT.

———————

JUNGE v. MACKNIGHT.

(Filed April 19, 1904).

JUDGMENTS—*By Default Final—Cancellation of Instrument—Cloud on Title—Deeds—The Code, secs. 208, 385, 386, 237, 390.*

The rendition of a judgment by default final at the return term in an action to cancel a deed, is an irregularity for which it should be set aside.

CONNOR and WALKER, JJ., dissenting.

ACTION by W. P. Junge and another against H. P. Mac-Knight, heard by *Judge C. M. Cooke,* at September Term, 1903, of the Superior Court of MOORE County. From a judgment for the plaintiff the defendant appealed.

*U. L. Spence* and *W. J. Adams,* for the plaintiff.
*H. P. MacKnight, in propria persona.*

MONTGOMERY, J. The plaintiff filed his complaint at the May Term, 1903, of the Superior Court of Moore County and alleged therein that he was the owner in fee and in the possession of a certain lot of land described in the complaint, and that the defendant, through an alleged deed of the sheriff of the county made under an execution, had cast a cloud upon the plaintiff's title. The prayer for judgment was that the deed from the sheriff to the defendant be

declared void and cancelled. The defendant having filed no answer a judgment by default final was entered up against him. In that judgment it was decreed that the title to the property was in plaintiff, that the deed from the defendant to the sheriff was of no effect and void and that it be delivered up and cancelled. At the next term of the Superior Court the defendant, after having given the plaintiff proper notice, made a motion in writing to set aside the judgment by default final on the ground that it was irregular, and because the summons was not served on the defendant ten days before the first day of the term of the Court at which the judgment was entered. His Honor refused the motion on the ground that the facts as he found them showed that the summons was served on the defendant ten days before the beginning of the term of the Court. We are of the opinion that the judgment should have been set aside for irregularity. Judgments by default final can be rendered in this State only in the cases mentioned in section 385 of The Code, and this case does not fall under that section. In section 386 of The Code it is provided that in all other actions, except those mentioned in 385, when the defendant shall fail to answer, and upon a like proof, judgment by default and inquiry may be had at the return term, and inquiry shall be had at the next succeeding term.

In the same section (386) it is further provided that, except when a reference may be ordered to state a long account, the inquiry shall be executed by a jury unless by consent the Court is to try the facts as well as the law. The clear meaning of section 386 of The Code is that in all actions except those embraced in section 385 of The Code a plaintiff cannot recover a judgment by default final upon the failure of the defendant to answer until he has proved all the material allegations of his complaint.

In Georgia, there are special exceptions, as with us, in

which judgment by default final may be had, and we find numerous cases in the Court of that State in which it is held that a plaintiff cannot take a judgment by default upon the failure of the defendant to file an answer until he has proved all the material allegations of his complaint, and in *Sannes v. Sayne,* 78 Ga., 468, the Court said: "The defendant while in default may resist passively whatever is brought to attack him, but cannot make a counter-attack. Though not allowed to return the fire he is not obliged to run but may stand until he is shot down. Exceptions to the general rule are made by statute, but this case is within the relief itself." And in regard to the plaintiff, the Court said: "Whether, on matters of fact, he is before the jury or before the Judge can make no difference in his burden. He must produce enough evidence to manifest the truth of every material allegation. There is a trial to that extent, though there be no issue in the record. There must be an examination of evidence and a determination of such facts as the declaration necessarily involves. The law itself, by requiring evidence, puts the truth of these facts in issue, and keeps up the issue until the facts are established." If this action had been for the recovery of or for the possession of the land, the defendant having failed to answer and to file the undertaking required by section 237 of The Code, judgment by default final might have been rendered against him under the provisions of section 390 of The Code. *Jones v. Best,* 121 N. C., 154. The last-mentioned section of the Code furnishes the only additional exception to the rule laid down in section 386.

Reversed.

CLARK, C. J., concurring. The Code, section 385, allows a judgment by default final at the return term "on failure of the defendant to answer," upon a verified complaint

alleging an express or implied contract to pay a "sum of money fixed by the terms of the contract, or capable of being ascertained therefrom by computation." And section 386 provides: "*In all other actions,* except those mentioned in the preceding section, when the defendant shall fail to answer and upon a like proof (as to service of summons, etc.), judgment by default and inquiry shall be had at the return term, and inquiry shall be executed at the next succeeding term." This language is too explicit to admit of two constructions.

When the action is one sounding in damages and there is judgment by default and inquiry, the inquiry must be made at the next term by a jury. In most other cases, especially in proceedings formerly cognizable in equity, the judgment by default and inquiry at the return term upon failure to answer authorizes a judgment final *pro confesso* at the next term by the Court on inspection of the record without further proof, if the complaint is verified. The statute has authorized a final judgment at the return term only in the instances stated in section 385. The general rule (section 208) is that the decision of a cause is to be had not before the second term, and the exception made as to final judgment at the return term when no answer is filed is restricted to the plain cases mentioned in section 385, probably for the reason that it could not be known till the Court was on the point of adjourning that no answer would be filed; and in all cases but a plain action for a definite money demand on a verified complaint the Court would not ordinarily have opportunity to consider the effect of a judgment *pro confesso,* or it may be that it was intended, except as to such plain actions, to give a defendant who had been inadvertent, or badly advised, opportunity at the next term to ask leave, upon cause shown, then to file answer before final judgment passes against him.

In 1 Black on Judgments, section 28 (2 Ed.), it is said:

"An order that a bill be taken *pro confesso* is interlocutory (as in our Code, section 386) and intended to prepare the case for final decree. Its effect is similar to that of a default in an action at common law, by which the defendant is deemed to have admitted all that is well pleaded in the declaration. The defendant has lost his standing in Court and is not entitled to notice of its further proceedings, but the matters set forth in the bill do not pass *in rem judicatam* until the final decree"—which by our Code, section 386, is at the next term, though in most cases (except those sounding in damages) judgment passes at that term as is above stated, without further proof, if the complaint was duly verified. See also, 5 Enc. Pl. & Pr., 989; 6 *Ibid,* 99, 104.

In *Roulhac v. Miller,* 90 N. C., 176, *Smith, C. J.,* notes as an innovation that final judgments "are now allowed" at the return term upon a verified complaint for a money demand, certain in its nature, and italicises the class of cases in which such summary judgment at the first term is committed. That final judgment is authorized only in cases falling under section 385 is again noted in *Brown v. Rinehart,* 112 N. C., 772; *Battle v. Baird,* 118 N. C., 854; *Stewart v. Bryan,* 121 N. C., 46, and *McLeod v. Nimocks,* 122 N. C., 437.

It may be noted here that by chapter 626, Laws 1901, judgment at the return term is further authorized in actions upon a bill, note, bill of exchange, liquidated and settled account, or for divorce," where the summons shall be served and the complaint filed in the Clerk's office "at least thirty days before the term," whereupon the action shall stand for trial at the return term. Except in such cases section 385 still presents the only instance in which the law authorizes a final judgment at the return term, except when judgment is taken in ejectment under The Code, section 237, for failure to file a defense bond. *Jones v. Best,* 121 N. C., 154.

CONNOR, J., dissenting. I regret that I cannot concur in the opinion of the Court in this case. His Honor having found as a fact that a summons was served upon the defendant ten days before the first day of the term and the plaintiff having filed and verified the complaint within the first three days, the defendant was in default in that he filed no answer during the term, nor obtained an extension of time therefor. This presents the question as to the status of the case at the last moment of the term. The several sections of The Code must be read together and so construed as to bring about a harmonious and orderly system of procedure. The plaintiff complied strictly with section 233 of The Code by setting forth in the complaint a concise statement of the facts constituting his cause of action. The defendant within the time fixed should have filed a demurrer or an answer. If a demurrer, he should have set forth his grounds thereof; if an answer, it should have contained a general or specific denial of each material allegation of the complaint controverted by him, or of any knowledge or information thereof sufficient to form a belief, and in addition thereto, if he so desired, any new matter by way of avoidance or counter claim. Upon his failure to do either within the time prescribed it is expressly provided that "Every material allegation of the complaint not controverted by the answer * * * shall for the purpose of action be taken as true." Section 268 of The Code. In this condition of the record the inquiry arises as to what is the next step to be taken. Section 385 provides that, "where complaint sets forth one or more causes of action, each consisting of the breach of an express or implied contract to pay, etc., upon proof of personal service, etc., and upon the complaint being verified, judgment shall be entered at the return term for the amount mentioned in the complaint, etc., and where the defendant, by his answer in such an action, shall not deny the plaintiff's claim,

but shall set up a counter-claim, etc." Section 386 provides
that "In all actions, except those mentioned in the preceding
section, when the defendant shall fail to answer, and upon
a like proof, judgment by default and inquiry may be had
at the return term, and inquiry shall be executed at the next
succeeding term. If the taking of an intricate or long
account be necessary to execute properly the inquiry, the
Court, at the return term, may order the account, etc.; in
all other cases, the inquiry shall be executed by a jury,
unless by consent the Court is to try the facts as well as the
law." It is manifest that this section of The Code relates
to causes of action for the recovery of money, either by way
of damages for breach of contract, or action sounding in tort.
It will be observed that this action is neither, but may be
assimilated under the practice prevailing prior to the adop-
tion of The Code to a bill in equity to quiet and remove
cloud from title. The action is brought under chapter 6
of the Laws of 1893, entitled "An act to determine conflicting
claims to real property," and the complaint states a cause
of action coming within the terms of this act. In the con-
dition of the pleadings at the last moment of the return term
of the Court there was nothing to be tried by a jury, noth-
ing in respect to which inquiry was to be made. As the
record then stood, no issues could be formulated because an
issue arises "upon a material allegation in the complaint
controverted by the answer.". Section 393. This leads us to
inquire as to the effect of a failure to answer. We find by
referring to the practice prevailing prior to the adoption of
The Code that "on the expiration of the time for pleading,
a rule to plead having been given, and a plea demanded,
when necessary the plaintiff's attorney should *search* for a
plea, if not delivered to him, with the clerk of the papers
who receives special pleas in the King's Bench, and with
the clerk of the judgments who keeps the general issue book

at the King's Bench office, or at the prothonotaries' office in the common pleas; and if no plea be delivered or found at either of those offices the plaintiff's attorney may sign judgment as for want of a plea. A judgment by default is *interlocutory or final.* When the action sounds in damages, as in *assumpsit, covenant, trover, trespass,* etc., the judgment is only interlocutory, 'that the plaintiff ought to recover his damages,' leaving the amount of them to be afterwards ascertained. In *debt,* the judgment is commonly *final,* etc." Tidd's Practice, page 563. It will be observed that in almost if not every form of action at common law, except debt, damages were demanded as a part of the recovery, either for the purpose of ascertaining the value of the recovery or as *detinue, trover* and *replevin,* etc., for the value of the property and damages for the detention. It is therefore probable that in every judgment by default, except in debt, the judgment was by default and inquiry. This may not be strictly accurate, but is sufficiently so for the purpose of this discussion. In courts of equity where no answer was filed to the bill it was the privilege of the plaintiff to have a decree *pro confesso.* "The proceeding which is termed taking a bill *pro confesso* is the method adopted by the Court for rendering its process effectual where the defendant fails to appear and answer by treating the defendant's contumacy as an admission of the complainant's case, and by making an order that the facts of the bill shall be considered as true, and decreeing against the defendant according to the equity arising upon the case stated by the complainant." Beach on Modern Eq. Prac., section 191. The mode of procedure in taking the bill *pro confesso* is prescribed by rules of courts. It is only necessary to inquire for the purpose of this discussion as to the effect of the decree *pro confesso* upon the right of the plaintiff to proceed to final decree. If the allegations in the bill are distinct and positive they

may be taken as true without proof. "The defendants are concluded by that decree, so far at least as it is supported by the allegations of the bill, taking the same to be true. Being carefully based on these allegations, and not extending beyond them, it cannot now be questioned by the defendants unless it is shown to be erroneous by other statements contained in the bill itself. A confession of facts properly pleaded dispenses with proof of those facts and is as effective for the purposes of the suit as if the facts were proved, and a decree *pro confesso* regards the statements of the bill as confessed." *Thompson v. Wooster,* 114 U. S., 104. This Court has held in accordance with the rules of practice prevailing in courts of law and equity that "All facts averred in the complaint, and not controverted by the defendant, must be taken as true for the purposes of the action." *Oates v. Gray,* 66 N. C., 442, *Dick, J.,* saying: "The object of The Code was to abolish the different forms of action and the technical and artificial modes of pleading used at common law, but not to dispense with the certainty, regularity and uniformity which are essential in every system adopted for the administration of justice. The plaintiff must state his cause of action with the same substantial certainty as was formerly required in a declaration; and the defendant must controvert the allegations of the complaint, or they will be taken as true for the purposes of this action." The Constitution has not abolished the principles of equity, indeed it could not; on the contrary it fully recognizes them, and they must be applied as far as may be under the existing statutory method of procedure, but when that is silent and inadequate, by the method and practice of the late court of equity in this State. *Morisey v. Swinson,* 104 N. C., 555. It has been further held that by a failure to deny the allegations in the answer, the fact is admitted and the effect of the admission is as available to the plaintiff as if found by

135——8

the jury. *Bonham v. Craig,* 80 N. C., 224. Or, as is said in *Cook v. Guirkin,* 119 N. C., 13, has the same force and effect as a finding of the jury.

After a default the defendant may not be heard to deny any facts set forth in the complaint, but he may be heard in respect to the judgment or decree tendered by the plaintiff upon his complaint. The plaintiff may have upon the failure to answer the complaint such judgment as upon the facts stated he is entitled to, and the defendant may be heard to object to the form of the judgment tendered. The failure to answer does not admit that he is entitled to the relief demanded, but that he is entitled to such relief as the law gives him upon the facts alleged. This Court in *McLeod v. Nimocks,* 122 N. C., 437, says: "The defendant does not complain of that part of the judgment which institutes an inquiry as to the damages which the plaintiff may have sustained by reason of the matters set out in the complaint, but he insists that the judgment by default final, for the conversion of the cotton and embezzlement of the proceeds, is such a judgment as could not have been rendered under section 386 of The Code. We think his contention not well founded. The action sounded in damages and was for a *tort*. The tortious conduct of the defendant was set forth in the complaint as the basis for demanding the damages. The judgment by default and inquiry, the defendant having said nothing in answer to the plaintiff's complaint, was conclusive that the plaintiff had a cause of action against the defendant of the nature declared in the complaint, and would have been entitled to nominal damages without any proof. *That* cause of action was admitted by the defendant's failure to answer." Here no damages were demanded and there was nothing to submit to the jury, the facts alleged in the complaint having been admitted by the failure to answer. We therefore think, that upon failure to answer, the plain-

tiff was entitled to such relief in accordance with the facts stated in the complaint, and that by failure to answer the defendant could not call upon the plaintiff to make proofs of these facts. It would be a strange result if the new Code of Procedure, the purpose of which is to simplify and expedite remedial justice, should work out this result. That the plaintiff may take judgment in an action of this kind for want of an answer is shown by section 2 of chapter 6 of the Laws of 1893, "that if a defendant in such action shall disclaim in such answer any interest in the estate or property or suffer judgment to be taken against him in such answer, plaintiff could not recover cost."

An examination of the complaint and judgment develops the fact that in this respect the judgment is erroneous, in that it taxes the defendant with the cost. The judgment is strictly in conformity to the relief to which the plaintiff is entitled upon the facts set forth in his complaint. The plaintiff alleges that one Lasker was, on October 14, 1899, the owner of the land in controversy. That on said day he executed a mortgage containing power of sale, which was duly recorded October 23, 1899; a certified copy of the mortgage is attached to the complaint. That said mortgage was given to secure a note of $25,000 due on October 14, 1902, with interest from date of payment quarterly, and that upon default in payment of interest the power of sale should be executed. That on April 8, 1901, the mortgagee, pursuant to the power of sale, there having been default in the payment of interest, sold the land after advertisement, etc., and that plaintiff purchased, paid the purchase-money and took deed therefor; a certified copy of the deed is attached to the complaint. That after the execution and registration of the mortgage certain judgments were recovered and docketed against said Lasker. That the defendant had execution issued on said judgment, and after the sale under the

mortgage, August 11, 1902, had the land sold and purchased at said execution sale and took deed from the sheriff therefor; a certified copy of the deed is attached to the complaint. That at the time of issuing said execution the judgment debtor was dead. That the plaintiff claims title to said land under said sheriff's deed, etc. That said deed is a cloud upon plaintiff's title. These facts being admitted by the failure to answer, there can be no possible doubt of plaintiff's right to the relief demanded, under chapter 6, Laws 1893. *Daniel v. Fowler,* 120 N. C., 14; *Rumbough v. Mfg. Co.,* 129 N. C., 9; Bispham Eq., section 474; Beach Modern Eq., 556, 558. The question is important to the courts and to the profession. I am quite sure, from an experience on the Superior Court bench and at the bar, that in all actions for the recovery of property, when no damages are claimed, or when it is not necessary to assess the value of the property, as well as in actions for relief formerly sought in courts of equity fixing rights of property, etc., it is and has been for many years the custom to take judgment by default final in accordance with the facts stated in the verified complaint. The law as held by the Court in this case will render many judgments taken in accordance with the course and practice of the Court irregular, and I cannot but think seriously delay and embarrass the administration of remedial justice. By simply standing mute the defendant can in actions of this character, and others in which no damages or an uncertain amount is demanded, put the plaintiff to the expense and annoyance of proving the allegations of his complaint. I must confess, with all deference, that I would be at a loss to know what issue should be submitted to the jury in this case. There is not a material allegation of the complaint controverted. Should an issue be submitted upon each allegation as if denied, or the general issues? I think great confusion must ensue from the construction put upon

the several sections of The Code. There is another view of this case upon which I think the judgment of his Honor should be affirmed, conceded that the judgment is irregular in the respect pointed out by the Court. It is held by this Court that such a judgment will not be set aside unless the defendant sets forth facts showing *prima facie* a valid defense, and the validity of the defense is for the Court and not with the party. *Jeffries v. Aaron,* 120 N. C., 167. The defendant based his motion to set this judgment aside upon the ground that the summons was not served on him ten days before the first day of the term. After a war of affidavits, which I have examined, his Honor, it seems to me, could not have done otherwise than refuse the motion. In the case on appeal it is stated that the defendant did not at any time request the Court to find any of the facts set forth in the affidavit except as to the date of the summons. He attached to his original affidavit an answer which he proposed to file. An examination of it shows that although he denies, as of his own knowledge, the existence of documents, papers and records, of which it is difficult to understand how he could be ignorant, he does not really, and seriously he does not really, taking his entire answer, set up any substantial defense to the action. He swears to many legal conclusions, such as that the mortgage and deed of the plaintiff are void, for that he says in his brief there is no allegation that they were stamped, and it does not so appear from the copies taken from the registry. I cannot think that from any point of view the plaintiff should be put to further test or trouble in this case.

This Court has frequently held that an irregular judgment may be set aside at any time. The safety of titles to property dependent upon the validity of such judgment was secured by the principle announced in *Jeffries v. Aaron, supra,* which seems to be overruled by the decision in this

case. I cannot but think that the doctrine now announced will endanger many titles, as in suits for foreclosure of mortgages and many other actions affecting title to land. The case of *Jeffries v. Aaron* cannot be distinguished from the one before us. It is a motion to set aside a judgment by default final upon an open account. *Faircloth, C. J.,* says: "The motion is not put upon the ground of mistake, surprise or excusable neglect." This Court reversed the Court below, setting aside the judgment. See also, *Stancil v. Gay,* 92 N. C., 455; *Peoples v. Norwood,* 94 N. C., 167.

I cannot think that from any point of view the plaintiff should be put to further test or trouble in this case.

WALKER, J., concurs in the dissenting opinion.