JUNGE v. MacKNIGHT.

(Filed December 17, 1904).

JUDGMENTS—*Quieting Title—The Code, secs., 385, 386—Acts 1893, Chap. 6—The Code, sec. 286.*

> In an action to determine conflicting claims to real property, the failure of the defendant to answer at the return term entitled plaintiff to a judgment by default final in accordance with the facts stated in the complaint, without inquiry or proof of such facts.

CLARK, C. J., and DOUGLAS, J., *dissenting.*

PETITION to rehear this case, reported in 135 N. C., 105.

*U. L. Spence* and *W. J. Adams,* for the petitioner.
*H. P. MacKnight, in propria persona, in* opposition.

CONNOR, J.   This cause is before us upon a petition to rehear.   After a full and anxious consideration we are of the opinion that the petition should be allowed and the judgment

of the Superior Court affirmed, thus reversing the decision of this Court. 135 N. C., 105. We are not inadvertent to the well-settled rule of this Court recognized and adhered to in a number of cases which will be found collected in Clark's Code, Rule 53, p. 943. We are of the opinion that in respect to a question of practice, especially where, in a matter of which we are compelled to take notice, the almost uniform custom has been followed otherwise than as held by us, we should not hesitate when convinced of error to reverse our judgment. Many titles are dependent upon the validity of judgments rendered as the one before us. The reason and authorities set forth and cited in the several opinions filed at the first hearing render it unnecessary to discuss the question at any length. It will be noted that, as was then said, the plaintiff must be careful to draw his judgment when by default final, according to the right arising upon the case stated by the complaint, because "The defendant is concluded by the decree so far at least as it is supported by the allegations of the bill." If the decree or judgment do not conform to this well-settled principle, if it give relief in excess of or of a different character from that to which the plaintiff is entitled upon the *allegations of fact* in the complaint, the Court will promptly set it aside upon application. The practice prevailing in courts of equity, to which in some measure The Code system in this respect may be assimilated, is thus stated by *Mr. Beach:* "The proceeding which is termed taking a bill *pro confesso* is the method adopted by the Court for rendering its process effectual when the defendant fails to appear and answer, by treating the defendant's contumacy as an admission of the complainant's case and by making an order that the facts of the bill shall be considered as true, and decreeing against the defendant *according to the equity arising upon the case stated by the complainant.*" Mod. Eq. Pr., 191; *Morrisey v. Swinson,* 104 N. C., 555; *Thompson v.*

*Wooster,* 114 U. S., 104. It thus becomes important that the pleader, when he wishes to take a judgment by default final, set forth clearly the *facts* upon the admission of which by failure to answer he bases his right to relief, so that the Court may, upon an inspection of his complaint, adjudge his right to correspond with such facts. It also becomes the duty of the judge in such case to cause to be read or to inspect the complaint before signing judgment, so that the right adjudged may be such as, upon the facts stated, the plaintiff is entitled to. In courts of equity, which are always open for the hearing of causes and rendering of decrees upon "rule days," it is usual to take the decree *pro confesso* and give the defendant an opportunity at the next "rule day" to show cause against the decree tendered by the plaintiff when he will be heard for that purpose only, unless he move to set aside the decree *pro confesso.* In our system of holding the courts only at stated terms, with no power in the judge to sign judgments out of term, except by consent, it is not practicable to follow the equity rules. It often happens that important judgments involving large property interests are signed at the last moment of the Court. The most careful judges find themselves embarrassed by this condition. It might be well to adopt a rule requiring all judgments which are to be taken by default during the term to be presented with the verified complaint not later than Thursday of the term. This, of course, is only suggestive. The petition to rehear must be allowed and the judgment below

Affirmed.

MONTGOMERY, J., concurring. This case is before us upon the petition of the plaintiff appellant for a rehearing. It was first heard at the Spring Term, 1904, and the opinion of the Court is reported in the 135th Volume of Reports, p. 105. The action was commenced for the purpose of determining

an adverse claim set up by defendant to certain real estate of the plaintiff, under the provisions of chapter 6 of the Laws of 1893. The defendant filed no answer, and upon the complaint having been fully verified a judgment by default final in favor of the plaintiff was rendered. Upon an appeal to this Court the judgment was reversed. There was a divided Court, however, two of the Judges having dissented. The Justice who writes this concurring opinion wrote the opinion in the case when it was here before at the Spring Term, 1904. Having changed his opinion as to the question involved, and expressed his views in a concurring opinion filed by him in the case of *Eason v. Dortch,* at this term, the dissenting opinion of the Court in the case as originally heard becomes the opinion of the Court. It is needless to reiterate what was said in the dissenting opinion in the case and what was said by the writer of this opinion in *Eason v. Dortch, supra,* as those opinions can be readily found and examined. Two further matters, however, I wish to add which seem to me to be pertinent: First, it is not provided in section 386 of The Code that when the defendant shall fail to answer, judgment by default may be had at the return term, but that judgment by *default and inquiry* may be had and the inquiry executed at the next succeeding term. A judgment by default is one thing; a judgment by default and inquiry consists of two things. There are two kinds of judgments by default—one final, the other interlocutory. In actions *sounding in damages* the interlocutory judgment, which is rendered for want of an answer, is an admission or confession of *the* cause of action; and there follows a writ of inquiry by means of which the damages are to be assessed. There is, it is true, an expression at the end of the opinion in the case of *Osborne v. Leach,* 133 N. C., 432, that may seem to be inconsistent with the first clause of that proposition, but all the authorities in this State, and they are numerous,

are to the effect that a judgment by default and inquiry admits *the* cause of action and the plaintiff is only to prove his damages. In *Banks v. Mfg. Co.,* 108 N. C., 282, the action was for damages on account of an alleged malicious prosecution. No answer having been made, a judgment by default and inquiry was had and this Court held that the Court below properly refused to submit an issue offered by the defendant as to whether defendant did prosecute the plaintiff maliciously and without proper cause. The Court said: "The issue tendered by the defendant was not raised, as there was no answer, and the matter was settled by the judgment by default." The Judge submitted one issue only, "What damages, if any, has plaintiff sustained?" and this Court approved of that course, saying "the only inquiry was as to the *quantum* of damages." In *Parker v. House,* 66 N. C., 374, the action was against a constable and his bond for a failure to use due diligence in collecting claims put into his hands as an officer. This Court said: "The default of the defendant in failing to answer admits the execution of the bond sued on, and that the plaintiffs have good cause of action, and the only question left for determination is the amount of damages." In *Coles v. Coles,* 121 N. C., 277, the Court said: "Upon a judgment by default and inquiry the legal liability is fixed by the default, and the inquiry is only to ascertain the amount."

In *McLeod v. Nimocks,* 122 N. C., 437, the action was for the recovery of damages for the conversion and embezzlement of the proceeds of cotton, and upon the defendant's failure to answer there was a judgment that the defendant, while the relation of principal and agent existed between the parties, unlawfully, willfuly and fraudulently embezzled and converted to his own use 141 bales of cotton, and that the plaintiff recover of the defendant the value of the cotton. The cause was continued until the next term of the Court, that an issue might be submitted and tried by a jury as to

137——19

the value of the cotton. The defendant, in his appeal from the judgment, did not except to the inquiry as to the value of the cotton, but he excepted to that part of the judgment on the question of conversion and embezzlement ·as not being authorized by The Code, sec. 286. This Court said: "We think his contention not well founded. The action sounded in damages. The tortious conduct of the defendant was set forth in the complaint as the basis for demanding the damages. The judgment by default and inquiry—the defendant having said nothing in answer to the plaintiff's complaint— was conclusive that the plaintiff had a cause of action against the defendant of the nature declared in the complaint, and would have been entitled to nominal damages without any proof. That cause of action was admitted by defendant's failure to answer." Numerous authorities were ·cited in support. The Court further said: "So, in the present case, the defendant, by his failure to answer, admitted the cause of action as set out in the complaint, and the judgment was a proper one."

Those decisions are not affected by the cases of *Parker v. Smith,* 64 N. C., 291, and *Lee v. Knapp,* 90 N. C., 171, where the actions were in *assumpsit* for goods sold and delivered, and the Court held that the plaintiff had to prove on the inquiry both the delivery of the goods and their value. In both cases it is expressly stated that the specific articles of merchandise were not set forth in the complaint. In *Witt v. Long,* 93 N. C., 388, where the action was in *assumpsit* for goods sold and delivered and the specific articles were set out in the complaint in the shape of an open account, it was held that the defendant not having stipulated to pay the price charged for the goods, that matter of their value was to be settled by a writ of inquiry. The cause of action then being confessed or admitted in interlocutory judgments by default, there follows a writ of inquiry by means of which the dam-

ages are to be assessed. The writ of inquiry is issued in no cases except in actions sounding in damages and only for the purpose of ascertaining the amount of the plaintiff's damages. A writ of inquiry in common law practice is defined in Black's Law Dictionary to be a writ "which issues after the plaintiff in an action has obtained a judgment by default on an unliquidated claim, directing the sheriff, with the aid of a jury, to inquire into the amount of the plaintiff's demand and assess his damages." Bouvier, in his Law Dictionary, defines a writ of inquiry as one "sued out by a plaintiff in a case where the defendant has let the proceedings go by default, and an interlocutory judgment has been given for damages generally, where the damages do not admit of calculation. It issues to the sheriff of the county in which the venue is laid, and commands him to inquire, by a jury of twelve men, concerning the amount of damages." The same definition, in very much the same language, of a writ of inquiry is given in the law dictionaries of Rapalje and Lawrence, Abbott, Anderson and Burrill. "If the action sounds in damages (according to the technical phrase), that is, be brought not for specific recovery of land, goods or sums of money (as is the case in real or mixed actions or the personal actions of debt and detinue), but for damages only, as in covenant, trespass, etc., and if the issue be an issue in law, or any issue in fact not tried by jury, then the judgment is only that the plaintiff ought to recover his damages without specifying their amount, for as there has been no trial by jury in the case the amount of damages is not yet ascertained. The judgment is then said to be interlocutory. On such interlocutory judgment the Court does not in general, itself, undertake the office of assessing the damages, but issues a writ of inquiry directed to the sheriff of the county where the facts are alleged by the pleadings to have occurred, commanding him to inquire into the amount of damages sustained, by the oath of

JUNGE *v.* MacKNIGHT.

twelve good and lawful men of his county, and to return such inquisition when made to the Court.    Upon the return of the inquisition, the plaintiff is entitled to another judgment, viz., that he recover the amount of the damages so assessed; and this is called final judgment." Stephens on Pleading, 105. Of course the damages are assessed under The Code by the jury in the presence of and under the direction of the judge.

I conclude, therefore, that judgment by default and inquiry, in section 386 of The Code, has reference only to actions sounding in damages.

The second matter I wish to mention is the argument to be drawn from the prohibition of the recovery of costs by the plaintiff in such actions as the present one when the defendant suffers judgment to be taken against him without answer. It seems to us that it was the intention of the law-makers to apply that prohibition only up to and including the appearance or return term.    It could hardly have been their intention to declare that in case of a failure of the defendant to answer, then an interlocutory judgment should be entered against him, and at the succeeding term of the Court have the whole question of title and alleged aspersion of title gone into, with the entire costs saddled upon the plaintiff even if he should be successful.    It seems to me to be clear that a judgment final was intended to be recovered by the plaintiff in actions of this nature by the statute which gives the right of action.    Acts 1893, chap. 6.

DOUGLAS, J., dissenting.    This case was heard at the last term of this Court, and fully considered.  In addition to the opinion of the Court, two opinions, one concurring and one dissenting, were carefully and ably written.    Not a single point was overlooked that seems to me to have any material bearing upon the case.    Therefore, under the repeated decisions of this Court the petition to rehear should be denied.

JUNGE *v.* MACKNIGHT.

In *Watson v. Dodd,* 72 N. C., 240, *Chief Justice Pearson,* speaking for the Court, says: "The weightiest considerations make it the duty of the courts to adhere to their decisions. No case ought to be reversed upon petition to rehear, unless it was decided hastily, or some material point was overlooked, or some direct authority was not called to the attention of the Court." Does the case at bar come within any of those exceptions? Certainly not, as far as any one has undertaken to advise us. This language of *Chief Justice Pearson* was quoted with approval in *Weisel v. Cobb,* 122 N. C., 67, with the citation of eighteen additional cases. The entire headnotes to *Weisel's case* are as follows: 1. "Rehearing of decisions of cases of this Court are granted only in exceptional cases, and, when granted, every presumption is in favor of the judgment already rendered."

2. "Where neither the record nor the briefs on the rehearing of a case disclose anything that was not apparently considered on the first rehearing, the former judgment will not be disturbed."

That case was decided by a unanimous Court, and has been cited in *Capehart v. Burrus,* 124 N. C., 48, and *Coley v. Railroad,* 129 N. C., 407, 57 L. R. A., 817. It was also the sole authority cited for the *per curiam* denial by the Court of the petition to rehear in *McNeill v. Railroad,* 135 N. C., 682, at this term. Of course where the petition comes within the spirit of the rule, it should be granted; but some presumption of law must adhere to the decisions of this Court.

Aside from this question, I see no reason why the decision should now be changed. I still adhere to my concurrance in the concurring opinion of *Clark, C. J.,* filed at last term, and which I presume will now become a dissenting opinion.

If Stephens were still the recognized standard of pleading in this State, and we were still dealing with covenant, trespass, trover, case, assumpsit, debt or detinue, my opinion

might possibly be different; but as our practice is governed by The Code, we must enforce its provisions.· In it the cases are specifically stated in which judgment by default final can be rendered; and it is expressly provided that " in *all* other actions   *   *   *   judgment by default and inquiry may be had at the return term, and inquiry shall be executed at the next succeeding term." The Code, secs. 385 and 386, chap. 6, of the Laws of 1893, does not profess.to make any change in The Code, and has no relation to the case at bar.    The expression, suffer judgment to be taken against him without answer," could apply just as well to judgments by default and inquiry as to those by default final.

The opinion of the Court frankly admits ·the danger attending the rendering of judgments by default final at the return term, and by its essential reasoning emphasizes the wisdom of the law-makers in restricting defaults final to a very small class of cases, and' providing that "in all other actions" the inquiry shall be held at the succeeding term.    It cannot be contended that the opinion of the Court follows the letter of the statute.    I cannot admit that it follows the spirit of the statute when it construes into it provisions which in its own opinion are essentially dangerous.    It is true we should all correct our errors when we are convinced that we are wrong, but I am not convinced and must stand upon the letter of the law and my convictions of its essential spirit.

CLARK, C. J., dissenting.    The sole point in this case is whether a judgment by default final could be entered. There is nothing in the record which calls in question the effect of a judgment by default and inquiry. The majority of the Court do not concur in a review of any part of the unanimous decision lately rendered in *Osborn v. Leach,* 133 N. C., 432, since cited and approved in same case, 135 N. C., 628, which makes it therefore unnecessary to discuss it.    I concur with *Mr.*

*Justice Douglas'* dissent upon the question presented by the record, and refer to the views set forth in my concurring opinion on the former hearing of this case, 135 N. C., 107.